UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED

NOV 1 5 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

FRANCES L. GREENHILL

      Plaintiff

        Vs.                 Civil Action No. 05-1100 (RWR)

Margaret Spellings

      Defendant

## RESPONE IN OPPOSITION TO THE MOTION TO DISMISS THE CASE.

    The attached response that was previously filed in the EEO response to the arguments made in the appeal to the US Department of Education to the EEOC, it is filed as my response to dismiss.  Please see the attached witness statement and attached affidavits the response to Ms. Cathy Hawkins falsified declaration. Telephone log for Megan Rose in which no telephone calls were returned to me after Submitting to her my business telephone number.

**Telephone Log**
**I left my work number at CPEP emergency room telephone number on her**
**voicemail to call me on and no return calls were made in response to her extention**
**of time requests and in response and a 301-736-6764 number as well.**

**2:30 pm on September 5, 2005**
**2:45 pm on September 5, 2005**
**3:15 pm on September 5, 2005**
**4:00 pm on September 5, 2005**
**4:30 pm on September 5, 2005**
**10:00 am on September 6, 2005**
**10:30 am on September 7, 2005**
**11:00 am on September 8, 2005**
**11:30 am on September 8, 2005**

*Frances L. Greenhill*    11-12-05

**Frances L. Greenhill**
**1900 Ritchie Road**
**District Heights, MD  20747**

Certificate of Service

I, Frances Greenhill will mail a copy of this opposition
to the defendants motion to dismiss on 11/16/05 by regular
first class mail.

Frances L. Greenhill
11/15/05

Affidavit

11/12/05

I Boris E. Johnson would like to witness to the fact that Cathy Hawkins, did not

Speak to Ms. Greenhill at any in depth length of time regarding her settlement

Agreement in July 2002 because I was there with Ms. Greenhill once she showed her a

Copy of the rescinded job offer from the Dept. of Justice she read it and took Ms.

Greenhill's card upstairs to the Staff.

*Boris E. Johnson*
Boris E. Johnson

This individual was with me on the day in question and he personally heard her comments to me.

attachment (A)

### U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Office of Federal Operations

| | |
|---|---|
| Frances Greenhill, ) | |
| ) | **Docket # 01A45669** |
| Complainant, ) | **Agency: 20042900** |
| ) | |
| v. ) | |
| ) | |
| Roderick R. Paige, ) | **COPY** |
| Secretary, U.S. Department of Education, ) | |
| ) | |
| Agency. ) | |

## COMPLAINANT'S BRIEF IN SUPPORT OF APPEAL

**Facts:**

This case is an appeal of the decision of the EEO Office of the United States Department of Education (DOE) to rescind its prior acceptance of Ms. Frances Greenhill's complaint of Breach of Settlement Agreement.

The Settlement Agreement (Agreement) in question was entered into between DOE and Ms. Greenhill in December 1999. *See* Appendix p. A1; Settlement Agreement. Under the terms of the Agreement, Ms. Greenhill resigned from her position with DOE, and agreed not to pursue future employment with DOE. In return, DOE agreed, *inter alia*:

(a) To remove the "Proposal to Remove" and any other documents relating to it from all personnel files and records that may be maintained in the Office of Elementary and Secondary Education (OESE) . . .; and

(b) To refer all requests for employment references on Complainant to Joyce Boykin, Loader, Headquarters Customer Service Team III, Human Resources Group. The response to such requests shall be limited to stating that Complainant "resigned effective [date of Complainant's written resignation and reason]," and verifying the dates of employment, Complainant's salary, GS-level, title, and performance ratings contained in Complainant's Employee Performance Folder (EPF).

1

The settlement agreement was breached by DOE on or around June 20, 2002. At that time, Ms. Greenhill was pursuing employment with the Department of Justice, and had secured a tentative offer of employment with the Civil Division as a GS-5 Secretary. On June 21, 2002, Ms. Greenhill received a letter from DOJ stating that this offer had been revoked due to negative information contained in Ms. Greenhill's DOE employment records, and a negative referral from DOE. *See* Appendix p. A24; DOJ Letter.

Further investigation ultimately revealed that DOJ's request for an employment reference was referred not to Joyce Boykin as the Agreement required, but to Ms. Mary Brayboy. Ms. Brayboy, acting as if she were unfamiliar with the particularities of the Agreement, erroneously claimed that Ms. Greenhill had been fired, and that she had agreed never again to apply for "any federal job." Ms. Brayboy went on to state, in direct contravention of the limitations prescribed by the Agreement, that "there were a lot of confrontations" with Ms. Greenhill, and that, given the opportunity to hire Ms. Greenhill again, she "would not choose her." *See* Appendix p. A6; Brayboy Referral.

On July 2, 2002, less than thirty days after the receipt of the DOJ withdrawal letter, Ms. Greenhill consulted an EEO Office Specialist, Cathy Hawkins, on the matter. During this meeting, Ms. Greenhill notified Ms. Hawkins that she believed the Settlement Agreement had been breached. Ms. Greenhill explained the details of the Agreement and how it was breached, and provided Ms. Hawkins with a copy of the Agreement, and a copy of the letter from DOJ, withdrawing their offer of employment. Ms. Greenhill was not instructed at this time to file a written complaint, nor was she provided any advice regarding the next steps to take in order to continue to pursue her complaint for Breach of Settlement Agreement.

2

Over the course of the following year, Ms. Greenhill continued to seek information and guidance from the EEO Office, DOE, and others regarding her complaint. On December 16, 2002, Ms. Greenhill wrote to her Congressman, Albert Wynn, seeking information and advice regarding how to proceed with her complaint. *See* Appendix p. A23; Letter to Wynn. After a series of letters to Ms. Greenhill, and to the EEO Office on her behalf, Congressman Wynn informed Ms. Greenhill in a letter dated May 20, 2003, that, in order to proceed with her complaint, she must contact EEO Office Director James White. *See* Appendix p. A19; Wynn Correspondence. In a July 30, 2003, letter to Director White, Ms. Greenhill once again notified EEO Office that her Agreement with DOE had been breached, and stated her desire to "continue pursuing the case." *See* Appendix p. A14; Letter to Director White.

On July 1, 2004, almost a year after sending her letter to Director White, Ms. Greenhill received a "Letter of Investigation" from Director White indicating that EEO Office had accepted her complaint for formal processing. *See* Appendix p. A11; White Letter of July 1, 2004. The letter treated Ms. Greenhill's letter of July 30, 2003, as a formal complaint, and cited that date as the time of filing. The letter went on to state that the thirty-day time limit for notifying the EEO Office of the breach had been waived. The letter further notified Ms. Greenhill that an investigator would be assigned to her case, and that this investigator would examine solely whether DOE had breached the Agreement. Thus, the letter of July 1, 2004, unequivocally accepted Ms. Greenhill's complaint, and indicated precisely which issues would subsequently be investigated.

On August 17, 2004, Ms. Greenhill received another letter from Director White, this time indicating that the July 1, 2004, letter was being rescinded. *See* Appendix p. A8; White Letter of August 17, 2004. Ignoring Ms. Greenhill's prior efforts to complain about the Breach to an

3

EEO Counselor, Director White again cited Ms. Greenhill's July 30, 2003, letter as the official filing date for her complaint. Director White then identified June 21, 2002, (the date of the DOJ withdrawal letter), as the date on which Ms. Greenhill knew or should have known that the Settlement Agreement had been breached. Relying on the July 30, 2003, letter, rather than Ms. Greenhill's July 2, 2002, direct complaint to her EEO Office Counselor, Director White concluded that Ms. Greenhill's complaint was not timely filed.

Director White went on to state, without elaboration, that "upon further review" of Ms. Greenhill's July 30, 2003, letter, he had determined that the reason's Ms. Greenhill provided "for failing to notify the EEO Office Director within the prescribed time limits do not warrant waiver of the prescribed time limits as permitted by 29 CFR §§614.604(c)." (Error in original; Code section should read "29 CFR § 1614.604(c).") Director White thus rescinded his decision to waive the time limits as indicated in his letter of July 1, 2004.

Ms. Greenhill appealed the Director's decision on August 23, 2004, and the matter is now before this body for adjudication.

**Summary of Argument:**

Complainant respectfully requests that Director White's decision of August 17, 2004, be set aside for several reasons.

First, Ms. Greenhill's complaint should be accepted as timely filed as of July 2, 2002. Her meeting with EEO Office Specialist Cathy Hawkins on this date effectively provided the EEO Office with notice of her complaint of Breach of Settlement Agreement. Ms. Hawkins never informed Ms. Greenhill that a formal, written complaint would also be required, nor did she otherwise indicate that the notice of complaint provided at this meeting was in any way

4

insufficient. Following the meeting of July 2, 2002, Ms. Greenhill continued, via a series of letters to various parties, to express her belief that the Agreement had been breached, and to inquire as to how to proceed. It was not until July 1, 2004 (in response to Ms. Greenhill's letter of July 30, 2003), that these efforts succeeded in procuring any manner of response from the EEO Office. The Agency's non-responsiveness to Ms. Greenhill's continued efforts from July 2, 2002, through July 30, 2003, does not entitle it to choose the latter as the official date of filing for her complaint. The complaint should be considered filed as of July 2, 2002, the date on which Ms. Greenhill first notified the Agency of the breach.

Second, the EEO Office's decision to accept the complaint as timely and to waive the thirty-day limit, notwithstanding the fact that Ms. Greenhill's complaint was timely filed, was appropriate and should stand. This decision was provided in Director White's letter of July 1, 2004, and was authorized by 29 CFR § 1614.604(c). This regulation states that the thirty-day time limit is "subject to waiver, estoppel and equitable tolling." The regulation places no explicit or implicit limits on the circumstances under which waiver may be granted. Waiver can thus be justified on any reasonable grounds. In this case, assuming *arguendo* that it was necessary, waiver is justified not only due to the extenuating circumstances that were originally accepted by the Agency, but also due to Ms. Greenhill's diligent pursuit of her claim from the date on which it first arose, and further due to the EEO Office's failure to notify Ms. Greenhill of any alleged insufficiency in the content or manner of her complaint, and still further due to the Agency's inequitable failure to process Ms. Greenhill's complaint in a timely fashion, and ultimately due to the sheer compelling nature of Ms. Greenhill's complaint. For all of these reasons, Director White's decision to waive the time limit and accept Ms. Greenhill's complaint was appropriate, and should be upheld.

5

Third, and for similar reasons, Director White's subsequent decision to rescind his prior waiver of the time limit was inappropriate, and should be set aside. The CFR provides no authority, explicitly or implicitly, for an agency to rescind its prior decision to waive the time limit. An agency's acceptance of a complaint should be binding when no further facts provide a basis for change. Consequently, the sudden and unjustified reversal of position by the Agency with regard to waiver of the time limit should be set aside.

**Argument:**

I.      Ms. Greenhill's Complaint Should be Accepted as Timely Filed.

In his letter of August 17, 2004, Director James White identified July 30, 2003, as the date on which Ms. Greenhill filed her complaint for Breach of Settlement Agreement with the EEO Office. Mr. White then went on to state that because Ms. Greenhill knew or should have known of the breach by June 21, 2002, her complaint could not be considered timely filed in accordance with the thirty-day time limit established by 29 C.F.R. § 1614.504(a). Contrary to these assertions, Ms. Greenhill actually first notified the EEO Office of her complaint on July 2, 2002, less than two weeks after she was made aware of the breach, and well within the thirty-day time limit.

A.      Ms. Greenhill provided the EEO Office with timely notice of her complaint on July 2, 2002.

Ms. Greenhill first became aware that her Agreement with DOE had been breached when she received a letter from DOJ on or around June 21, 2002. Prior to receipt of this letter, Ms. Greenhill had secured a tentative offer of employment from DOJ. In this letter, DOJ stated that it was withdrawing its offer of employment in light of negative information contained in Ms.

6

Greenhill's employment records, and a negative reference response from the DOE. Specifically, DOJ's request for an employment reference was referred not to Joyce Boykin as the Agreement required, but to one Mary Brayboy. Ms. Brayboy, who was the subject of the EEO complaint which produced the Settlement Agreement, ignored the terms of that agreement and erroneously claimed that Ms. Greenhill had been fired, and that she had agreed never again to apply for "any federal job." Ms. Brayboy went on to state, in direct contravention of the limitations prescribed by the Agreement, that "there were a lot of confrontations" with Ms. Greenhill, and that, given the opportunity to hire Ms. Greenhill again, she "would not choose her."

"EEO complaints are to be liberally construed 'since very commonly they are framed by persons unschooled in technical pleading.'" Brown v. Marsh, 777 F.2d 8, 15 (D.C. Cir. 1985) (citing Shehadeh v. Chesapeake & Potomac Telephone Co., 595 F.2d 711, 727 (D.C. Cir. 1978)). For the purposes of determining whether a timely EEO complaint has been made, "the relevant inquiry is not whether the complainant has filed a detailed statement spelling out precisely his objections but whether the actions he did take were 'adequate to put the [agency] on notice.'" Brown, 777 F.2d at 15 (citing President v. Vance, 627 F.2d 353, 362 (D.C. Cir. 1980)). In Brown, the court held that the complainant's repeated inquiries and filings were sufficient to put the Agency on notice, even though many of the complaints lacked specificity. In the present case, upon learning that her Agreement with DOE had been breached, Ms. Greenhill contacted the EEO Office and met with Specialist Cathy Hawkins. During this meeting, Ms. Greenhill notified Ms. Hawkins that she believed the Settlement Agreement had been breached, and asked for assistance in addressing the problem. Ms. Greenhill explained the details of the Agreement and how it was breached, and provided Ms. Hawkins with a copy of the Agreement, and a copy of the letter from DOJ, withdrawing their offer of employment. In short, Ms. Greenhill's efforts

7

to pursue her claim went beyond what courts have required of *pro se* complainants, and were more than sufficient to put the Agency on notice of the complaint.

Ms. Greenhill was not instructed at this time to file a written complaint, nor was she provided any advice regarding the next steps to take in order to continue to pursue her complaint for Breach of Settlement Agreement. At this point, Ms. Greenhill believed that she had properly brought her complaint to the attention of the EEO Office, and awaited their response.

B.    Ms. Greenhill was never advised that her complaint of July 2, 2002, was insufficient.

No response to Ms. Greenhill's July 2, 2002, complaint to the EEO Office ever came. For almost exactly two years from that date, Ms. Greenhill received no information from the EEO Office as to the status of her complaint. Nor did Ms. Greenhill receive any indication from the EEO Office that the steps she had taken on July 2, 2002, were in any way insufficient to spur processing of her complaint.

The Supreme Court in Burnett v. New York City Railroad Co. held that the technically imperfect efforts by a *pro se* complainant may be excused where the complainant reasonably believed her efforts to be sufficient. Burnett v. New York City Railroad Co., 380 U.S. 424, 429 (1965) (Statute of limitations tolled where complainant failed to file a timely federal claim "solely because he felt that his state action was sufficient"). Courts have been particularly lenient where a complainant's belief in the sufficiency of her efforts to lodge a complaint is based on the advice of an agency representative. *See* Jarrell v. USPS, 753 F.2d 1088, 1092 (1985); Siegel v. Kreps, 654 F.2d 773 (D.C. Cir. 1981); Cooper v. Bell, 628 F.2d 1208, 1214 (9th Cir. 1980); Henry v. Schlesinger, 407 F. Supp. 1179 (E.D. Pa. 1976). In Jarrell, the court waived the time limit for contacting an EEO Counselor because the complainant believed, on the

8

basis of his contacts with another EEO officer, that efforts were being made to address his complaint. When it later became apparent to Jarrell that no progress was being made in his case, he contacted an EEO Counselor, and his complaint was ultimately accepted as timely. In the present case, Ms. Greenhill reasonably believed that her efforts to lodge her complaint with the EEO Office were sufficient because the EEO counselor to whom she brought her complaint failed to advise her to take further action. When it later became apparent to Ms. Greenhill that no progress was being made in her case, she sought advice from various parties regarding how to proceed, and ultimately filed a written complaint with EEO Director White.

Because Ms. Greenhill took prompt action to provide the Agency with timely, detailed notice of her complaint, and because it is reasonable to believe these actions provided a sufficient basis to lodge a complaint, which reasonable belief was not clarified by the advice of an EEO counselor, Ms. Greenhill's complaint should be accepted as timely filed.

II.    The Agency Properly Waived the Thirty-Day Time Limit in its Letter of July 1, 2004.

Even where a complainant has failed to timely file a formal complaint with the proper office, the thirty-day time limit may be waived in accordance with 29 CFR § 1614.604(c). In this case, in its letter of July 1, 2004, the Agency unequivocally stated that the time limit had been thus waived, and accepted Ms. Greenhill's complaint for processing. Because 29 CFR § 1614.604(c) does not expressly limit the circumstances under which waiver may be granted, and because there are ample reasons to grant waiver in Ms. Greenhill's case, the Agency's decision to waive the time limit was appropriate, and should stand.

A.    The CFR does not explicitly limit the circumstances under which the time limits for filing a complaint of Breach may be granted.

9

29 C.F.R. § 1614.604 states simply: "The time limits in this part are subject to waiver, estoppel and equitable tolling." Neither this section nor any other sets forth any limitations on the circumstances under which waiver may be appropriate. Despite the EEO Office's suggestion that the reasons for Ms. Greenhill's alleged delay "do not warrant waiver of the prescribed time limits as permitted by 29 C.F.R. § 1614.604(c)," the regulation itself expresses no opinion as to when waiver is warranted or permitted. Rather, the plain language of the Code indicates that waiver can be justified on any reasonable grounds. Interpreting this language, courts have found waiver appropriate on a wide variety of grounds.

In this case, waiver is justified due not only to the extenuating circumstances that the Agency originally accepted as justification for waiver, but also due to Ms. Greenhill's diligent efforts to preserve her claim, due to the EEO Office's inequitable failure to process Ms. Greenhill's complaint in a timely fashion, and ultimately due to the sheer compelling nature of Ms. Greenhill's complaint. For all of these reasons, Director White's decision to waive the time limit and accept Ms. Greenhill's complaint was appropriate, and should be upheld.

> 1. Waiver is appropriate due to Ms. Greenhill's diligent efforts to preserve her claim.

"[C]ourts have excused parties, particularly those acting pro se, who make diligent but technically defective efforts to act within a limitations period." Bowden, 106 F.3d at 438. *See also* Irwin v. Dept. of Veterans' Affairs, 111 S. Ct. 453, 457 (1990) ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period"). In this case, Ms. Greenhill not only made a diligent effort to lodge her complaint within the limitations period, she continued to pursue her complaint through other means when the EEO Office failed to process her complaint or properly

10

advise her.  In addition to her contacts with the EEO Office, when she had not heard any definitive statement from the Agency, Ms. Greenhill wrote a letter to her congressman, Representative Albert Wynn, in December 2002, explaining her plight and requesting his assistance.  Ms. Greenhill continued to correspond with Rep. Wynn, who drafted several letters to the EEO Office on Ms. Greenhill's behalf.  It was only through Rep. Wynn's efforts that Ms. Greenhill was finally advised to again file a complaint with EEO Director James White.

Thus, when Ms. Greenhill filed her written complaint with Director White in July 2003, it was not the Agency's first notification of her complaint; rather, it was merely the first time that Ms. Greenhill's diligent, continuous efforts to have her complaint heard actually succeeded in getting the proper attention from the EEO Office.  It is significant to note that the process of filing a complaint for a Title VII violation, the only complaint process with which Ms. Greenhill was familiar, is initiated simply by orally communicating with an EEO counselor.  The process for challenging a breach of a settlement agreement, however, was unfamiliar to Ms. Greenhill, and is made more difficult by requiring a written notice.  Even if it is reasonable to allow agencies to establish an additional hurdle for claimants raising questions regarding a breach, the failure to communicate that subtle, but significant difference undermines the Agency's reliance on the lack of a written submission.  Here, the Agency's omission is even more egregious, due to the fact that Ms. Greenhill personally met with an EEO counselor for the express purpose of raising the breach, and was not informed of the distinct, formal process for filing a breach complaint.

Because Ms. Greenhill made a timely, though technically defective effort to file her complaint, and because she continued to diligently pursue her claim thereafter, the Agency's decision to waive the time limit in this case was consistent with the waiver provisions of the

CFR and case law applying those provisions, and should stand.

2.    Waiver is appropriate because EEO Office failed to act in a timely fashion to process Ms. Greenhill's complaint.

29 CFR § 1614.106(e)(2) states: "The agency is required to conduct an impartial and appropriate investigation of the complaint within 180 days of the filing of the complaint." By Ms. Greenhill's account of events, this investigation should have begun on July 2, 2002. Even by the EEO Office's account, the investigation should have begun no later than July 30, 2003. Instead, the EEO Office sent a letter on July 1, 2004, stating that the investigation would begin at that time. Thus, on or around July 1, 2004, somewhere between six and eighteen months after it should have ended, the 180-day investigation into Ms. Greenhill's claim finally began.

Courts have consistently held that the defense of failure to timely file is waived if EEO Office also fails to act in a timely fashion. *See* Bowden, 106 F.3d 433 (defense of failure to timely file waived where agency failed to object to timeliness in a timely fashion); Brown, 777 F.2d at 19 (defense of failure to timely file waived because "plaintiff would be substantially and unfairly prejudiced if dismissal on exhaustion grounds were permitted at this excessively late date."). Given the EEO Office's inexcusable delay in processing Ms. Greenhill's claim, it would be patently unfair to dismiss the claim at this late date due to Ms. Greenhill's alleged failure to meet a deadline. Fundamental principles of equity and fairness demand that Ms. Greenhill not be held to standards which the EEO Office has itself failed to satisfy. *See* Brown, 777 F.2d at 23 ("Fairness – which is the heart and soul of all notions of equity – prohibits us from permitting the government to raise, at this late date, a defense it ought to have pressed long ago, if it intended to press it at all.").

12

3.    Waiver is appropriate due to the compelling nature of Ms. Greenhill's claim, and the lack of prejudice to the Agency by consideration of the merits.

In <u>Burnett v. New York City Railroad Co.</u>, the Supreme Court stated that purpose of the statute of limitations – protecting defendants from stale claims – "is frequently outweighed . . . where the interests of justice require vindication of the plaintiff's rights." <u>Burnett,</u> 85 S. Ct. at 1055. In this case, the Agency's own Record of Contact acknowledges that the referral form submitted by DOJ was completed by Ms. Brayboy, in breach of the Agreement, and that the form "clearly stated negative comments regarding Ms. Greenhill." *See* Appendix p. A16, Record of Contact. Simply put, the facts of this case, as they were presented to the EEO Office over two years ago, clearly establish Ms. Greenhill's claim of Breach of Settlement Agreement.

Here, as in <u>Brown,</u> waiver of the statute of limitations is appropriate because "plaintiff would be substantially prejudiced by dismissal on this ground at this juncture while defendant would not be prejudiced at all by consideration of the merits except in the sense that it would lose an opportunity to rid itself of a troublesome lawsuit." <u>Brown,</u> 777 F.2d at 27.

III.    The EEO Office's Decision to Rescind its Initial Waiver of the Time Limit was Improper and Should be Withdrawn.

On August 17, 2004, Ms. Greenhill received a second letter from EEO Office Director James White, this time rescinding the previous decision to waive the thirty-day time limit and to accept her complaint for processing. Because the CFR does not provide any authority for Director White to rescind a prior waiver decision, and because Ms. Greenhill was not provided with notice that the waiver could be rescinded, the decision of August 17, 2004, should be set aside.

13

A.    The CFR provides no authority, explicitly or implicitly, for the EEO Office to rescind its initial decision to waive the time limit.

29 C.F.R. § 1614 sets forth in detail the rights and responsibilities of the various parties involved in a Federal Sector Equal Employment Opportunity dispute. It provides a right on the part of an aggrieved party to file a complaint for the breach of a settlement agreement. It establishes time limits within which the complainant and the EEO Office must file documents and issue decisions. It provides for the waiver of these time limits by decision of the EEO Office or bilateral agreement. Among all of these details, 29 C.F.R. § 1614 does not provide, imply, or otherwise discuss at any point a right of the EEO Office to rescind a decision to waive a time limit. Taken in context, this omission must be presumed deliberate.

The only mention of a right to rescind in Chapter 16 refers to the right of the EEO Office to reconsider the decision of one of its designated officers issued in a "Letter of Determination." 29 C.F.R. § 1601.21(b). The letter of July 1, 2004, according to the EEO Office's own classification, is a "Letter of Investigation." It does not issue a determination with regard to the merits of Ms. Greenhill's claim or the outcome of the substantive dispute. Consequently, § 1601.21(b) does not apply in this instance, and does not provide the EEO Office with a right to rescind its decision to waive the time limits.

Despite its inapplicability in this case, however, § 1601.21(b) is otherwise illustrative. It makes clear that the C.F.R. contemplates the authority of the EEO Office to reconsider its own decisions on its own initiative. Ultimately, the inclusion of a right to reconsider in the "determination" context, and the omission of such a right from other contexts, reflects a deliberate decision to restrict the right to reconsider to very specific circumstances, not including an agency's decision to waive time limits.

14

Moreover, § 1601.21(b) further confines this limited right to reconsider by excluding certain determinations entered *against* the government. Thus, to the extent that § 1601.21(b) has any bearing at all on the present dispute, it suggests that decisions adverse to the government should generally not be eligible for reconsideration by the EEO Office.

In conclusion, the decision to rescind waiver in this case was unsupported by any statutory authority and runs counter to the policy considerations discussed elsewhere in the C.F.R.

B.    Ms. Greenhill was given no notice that the decision of July 1, 2004, was subject to reconsideration.

While the § 1601 reconsideration provisions do not explicitly apply to the facts of this case, if any right on the part of the EEO Office to reconsider under § 1614 is to be implied from § 1601, then the responsibility to act in accordance with the guidelines and procedures set forth in § 1601 must also be implied.

§ 1601.21(b)(2) states that when the EEO Office elects to reconsider a prior decision, it must "provide prompt notification of its intent to reconsider." In this case, Ms. Greenhill was provided with no notice whatsoever that the EEO Office intended to reconsider its decision to waive the time limit. The letter of July 1, 2004, did not state or even suggest that the waiver decision could be reconsidered. Rather, the letter clearly stated that Ms. Greenhill's complaint had been accepted for processing, and specifically indicated the issues that the ensuing investigation would address. Notably, the timeliness of Ms. Greenhill's complaint was *not* identified in the list of issues subject to investigation. Nor did the C.F.R. provisions to which the letter referred suggest any authority on the part of EEO Office to reconsider its waiver decision.

Indeed, no provision of the CFR suggests that, after the 180-day investigatory period has

15

begun, the decision authorizing the investigation can be rescinded on timeliness or any other grounds. This is proper as a matter of logic and of public policy. It would be nonsensical to suggest that the EEO Office can reach back and decide not to conduct an investigation that has already begun. This would be akin to allowing a bettor to withdraw his wager after the game has already begun. In this instance, the EEO Office has accepted Ms. Greenhill's complaint for processing, and following forty-five days of substantive investigation, has suddenly changed its tune on procedural matters that were already settled. The EEO Office must not be thus empowered to retroactively dismiss, ostensibly for procedural reasons, a complaint that appears substantively problematic upon investigation.

The intent of the notice provision of § 1601.21(b)(2) is to afford a complainant the opportunity to show cause why the decision should not be changed. Ms. Greenhill was not afforded that opportunity. She was afforded no opportunity to elaborate upon or otherwise support her claim of extenuating circumstances. She was not allowed to challenge the EEO Office's asserted date of filing for her complaint. Indeed, she was led to believe that no such arguments were necessary.

Allowing EEO Office to rescind decisions without notice or other guidelines prevents complainants from knowing, and thus from asserting their rights to have input, which is tantamount to denying them their rights altogether. By failing to inform her of the possibility that they might rescind their waiver decision, EEO Office rendered Ms. Greenhill helpless to take any action to prevent them from doing so.

The EEO Office's delay in processing Ms. Greenhill's complaint has prevented any and all progress in her case for more than two years. As it stands, a case that should have been decided long ago has yet to even be examined on the merits in an adjudicatory setting. After

16

such a long period of administrative foot-dragging, it would be entirely unfair to allow the same administration to dismiss Ms. Greenhill's complaint without so much as completing its investigation. It would be increasingly unfair to suggest that, having decided to investigate almost a year after its self-imposed deadline, the EEO Office is then entitled to an additional two months in which to reconsider that decision. The EEO Office was given ample time to fully consider its decision in the first instance, and should be held to the decision it chose to issue.

**Conclusion**:

Because Ms. Greenhill made diligent, timely, and continued efforts to present her claim to the EEO Office, the Agency's decision to accept her complaint as timely on July 1, 2004, should be upheld, and its subsequent, unsupported reversal on August 16, 2004, should be overturned.

Respectfully Submitted,

_COPY_

Gary T. Brown
GARY T. BROWN & ASSOCIATES
320 Maryland Avenue, NE
Suite 100
Washington, DC 20005
TEL: (202) 393-4900
FAX: (202) 393-4903

17

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### District of Columbia District Office

|  |  |
|---|---|
| Frances Greenhill, ) | |
| ) | Docket # 01A45669 |
| Complainant, ) | Agency: 20042900 |
| ) | |
| v. ) | |
| ) | |
| Roderick R. Page, ) | |
| Secretary, U.S. Department of Education, ) | |
| ) | |
| Agency. ) | |

### CERTIFICATE OF SERVICE

I hereby certify that on this ___ day of October, 2004, I sent a copy of the foregoing Complainant's Brief in Support of Appeal and Appendix to the following parties, via United States Postal Service first class mail:

Equal Employment Opportunity Commission
Office of Federal Operations
ATTN: Robert J. Barnhart, Director
P.O. Box 19848
Washington, DC 20036

United States Department of Education
ATTN: Roderick R. Page
400 Maryland Avenue, SW
Room 2W228
Washington, DC 20202-4450

Gary T. Brown
GARY T. BROWN & ASSOCIATES
320 Maryland Avenue, NE
Suite 100
Washington, DC 20005
TEL: (202) 393-4900
FAX: (202) 393-4903

18